UDSC SNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/19/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILL ISNADY,

                Plaintiff,

-against-

VILLAGE OF WALDEN, VILLAGE OF WALDEN POLICE DEPARTMENT, SERGEANT ERIC METZGER, OFFICER DUSTIN JAMES, OFFICER ANTHONY TOLVE, OFFICER ROBERT MONTANARO, OFFICER JOHN CONKLIN, DISPATCHER JOHN MCNAMEE, WALDEN BUILDING INSPECTOR DEAN STICKLES AND WALDEN POLICE CHIEF JEFFREY HOLMES,

                Defendants.

No. 7:18-cv-02662-NSR
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

    Plaintiff Will Isnady ("Plaintiff") commenced this action on or about March 26, 2018, against the following Defendants ("Defendants"): Village of Walden ("Village"), a municipality, and its employee Walden Building Inspector Dean Stickles ("Stickles"), Village of Walden Police Department ("Walden Police Department"), a New York government agency, and its following employees: Sergeant Eric Metzger ("Metzger"), Officer Dustin James ("James"), Officer Anthony Tolve ("Tolve"), Officer Robert Montanaro ("Montanaro"), Officer John Conklin ("Conklin"), Dispatcher John McNamee ("McNamee"), and Walden Police Chief Jeffrey Holmes ("Holmes"). Plaintiff alleges that Defendants have systematically and continuously discriminated against him on the basis of his race and national origin, and in doing so have violated Plaintiff's rights under 42 U.S.C. § 1983. Defendants collectively submitted

their motion ("Motion to Dismiss") on or about November 9, 2018, seeking to dismiss the Complaint in its entirety pursuant to Fed. R. C. P. 12(b)(1) and 12(b)(6).

For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

The following facts are derived from the Complaint or matters of which the Court may take judicial notice and are accepted as true for the purpose of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

### I. Procedural History

A. Bankruptcy Proceeding

On or about January 12, 2015, Plaintiff commenced a bankruptcy proceeding ("Bankruptcy Proceeding") by the filing of a Petition. Plaintiff amended his Petition on March 19, 2015. The Bankruptcy Court issued a discharge order on a March 2, 2018, deemed the estate to be fully administered, and closed the case on May 30, 2018. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mot."), Ex. E – H, ECF No. 45.)

B. State Court Action by Plaintiff

On or about October 16, 2016, Plaintiff commenced a state court action against Defendants Village of Walden, Village of Walden Police Department, and Walden Preservation L.P. d/b/a The Cedars ("Walden Preservation") by filling a Verified Complaint. (Defs.' Mot., Ex. B). The state court claims arose from the same occurrences as those giving rise to the instant federal action.

On December 14, 2017, the state court issued a decision and order granting Plaintiff leave to amend two of the six causes of action and dismissing the rest for failure to state a claim pursuant to CPLR ¶ 3211(a)(7). (*Id.*) The two remaining causes of action are currently pending before the State Court. (*Id.*)

C. Instant Federal Action

Plaintiff commenced the instant action by filling a Complaint ("Compl.," ECF No. 1) on or about March 26, 2018 alleging that Defendants have systematically and continuously discriminated against him on the basis of his race and national origin, and in doing so have violated Plaintiff's rights under 42 U.S.C. § 1983. Plaintiff thus demands judgment against the Defendants, jointly and severally, for monetary damages in the amount of $3,000,000.00 for the Defendants' deprivation of the rights, privileges and immunities secured by the United States Constitution. (*Id.*) Plaintiff further demands judgment against the individual Defendants, jointly and severally, for punitive damages in the amount of $3,000,000.00, as well as other relief as this Court deems just and proper. (*Id.*)

On or about November 9, 2018, Defendants collectively submitted their motion ("Motion to Dismiss," ECF No. 44) to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). In their Motion to Dismiss, Defendants request this Court take judicial notice of the bankruptcy proceeding Plaintiff commenced in January 2015. The bankruptcy proceeding concluded in a March 2, 2018 Discharge and thereafter was closed on May 30, 2018. (*Id.*) In addition to questioning Plaintiff's standing to file civil suits as a debtor, Defendants further allege in their Motion that Plaintiff accepted the benefit of the discharge without disclosing the instant case seeking damages in excess of $3,000,000.00, which allegedly is and remains an asset of the bankruptcy estate. (*Id.*) Defendants contend that Plaintiff was fully aware

of the claims and his interest in pursuing the case at bar, and yet he waited three weeks until after the discharge in his favor to file the instant claim. Defendants therefore argue that the doctrine of judicial estoppel bars the instant action. (*Id.*)

Defendants also request this Court take judicial notice of the state court action commenced by Plaintiff on or about October 16, 2016 against Defendants Village of Walden, Village of Walden Police Department and Walden Preservation.[1] (*Id.*) Defendants argue that the instant action is barred by the doctrines of res judicata, collateral estoppel and Rooker-Feldman.

Plaintiff opposes Defendants' Motion to Dismiss and submitted his Memorandum of Law in Opposition to Motion ("Pl.'s Opp'n.," ECF No. 49) on or about January 25, 2019. Defendant submitted its Reply Memorandum of Law in Support of its Motion to Dismiss ("Reply," ECF No. 51) on February 15, 2019.

## II. Factual Background

Plaintiff is a 48-year-old black male and owns the real property located at 154 West Main Street (the "Property" or "Subject Premises"), in the Village of Walden, County of Orange, in New York State. Plaintiff alleges that Defendants have systematically and continuously discriminated against him on the basis of his race and national origin, which is Haiti. The discrimination alleged spans over a period of several years and includes the following incidents:

A. Selective Enforcement of the Municipal Code and the Zoning Code

Beginning in or about 2001, Plaintiff received numerous violation notices and stop work orders concerning the Property, pertaining to alleged violations of the Municipal Code of the Village of Walden ("Municipal Code") and the Zoning Code of the Village of Walden ("Zoning

---

[1] Walden Preservation is a nonparty in the instant federal action.

Code"). (Compl. ¶ 47.) The alleged violations include issues regarding rubbish and unregistered vehicles located on the Property, as well as work allegedly being performed on the Property without a building permit. (Compl. ¶¶ 48 – 49.)

Plaintiff alleges that Defendants selectively enforced the Municipal and Zoning Code against him due to his race and national origin, prohibiting "certain uses by the Plaintiff"[2] of the driveway on the Property. (Compl. p. 7, ¶ 50.) Plaintiff states that Defendants did not enforce these codes against other properties in the same jurisdiction, and owners of other properties were not prohibited from such uses of the driveways located on their respective premises. (*Id.*)

B.  Denied Right of Access to Cliff Street

Walden Preservation, a non-party, owns a former public street that was once known as Cliff Street ("Cliff Street"), in the Village of Walden. Cliff Street is the only route to access a public road from the Subject Premises. Prior to August 3, 1978, Cliff Street was open to vehicular traffic at all times and parking was permitted. (Compl. ¶¶ 31 – 34.) Until August 3, 1978, the previous owners of the Property used Cliff Street to gain access to the Property's driveway. On August 3, 1978, Cliff Street was transferred to Walden Housing Associates ("Walden Housing"), a nonparty, and became a private property. (Compl. ¶¶ 35 – 36.) There is a recorded easement from Walden Housing to Plaintiff, which prohibits "[a]ny physical demarcation [that] shall be at the property line of the Navas[3] and Westerman[4] parcels." (Compl. ¶¶ 40 – 42.) Plaintiff also claims that there is an easement by necessity in favor of Plaintiff over the real property of Walden Housing as the transfer and privatization of Cliff Street to Walden

---
[2] Plaintiff's Complaint does not specify the prohibited uses.
[3] Navas is Defendant Village of Walden's predecessor in interest to the property that includes Cliff Street.
[4] Westerman is Plaintiff's predecessor in interest to the Subject Premises.

Housing removed Plaintiff's access to a public street from his driveway.[5] (Compl. ¶ 43.) On July 16, 2015, Walden Housing transferred its interest in Cliff Street to Walden Preservation. (*Id.*)

On or about March 18, 2016, Walden Preservation notified Plaintiff by writing that he was prohibited from accessing Cliff Street. (Compl. ¶ 45.) Plaintiff was threatened and later charged with trespass. (*Id.*) Walden Preservation invoked the aid of Defendant Walden Police Department to enforce its perceived rights to preclude Plaintiff from accessing the road. (*Id.*)

C. Wrongful Entry

On or about June 14, 2015, Defendant Walden Police Department, led by Defendant Sergeant Metzger, entered onto the Property. (Compl. ¶ 52.) Plaintiff alleges that the entrance was without cause and created a "disturbance," and that Defendants intimidated Plaintiff and his tenants while on the Property. (Compl. p. 8, ¶¶ 53 – 58.) On July 15, 2015, Plaintiff reported the incident in writing to Defendant the Village of Walden, Office of the Village Manager, but no actions were taken. (*Id.*) Plaintiff believes that Defendants' inaction was due to his race and national origin. (*Id.*)

D. "Hit and Run" Incident and Failure to Investigate

On or about the evening of August 14, 2015, two vehicles owned by the Plaintiff were vandalized and damaged in a "hit and run" type incident, where vehicles were plowed together by a third party who left the scene of the incident. (Compl. ¶¶ 59 – 60.) The incident occurred in the Village of Walden and was recorded on a surveillance camera of the Defendant Walden Police Department. Plaintiff called Defendants Dispatcher McNamee, Defendant Officer James,

---

[5] Plaintiff cannot access his driveway unless he travels over Cliff Street.

and Defendant Officer Tolve to make a police report of the incident. The New York State Police was also called. (Compl. ¶¶ 61 – 63.)

When the New York State Police Trooper arrived at the scene and inquired about the surveillance video, Defendant Walden Police Department lied to the State Trooper and did not produce the video for the New York State Police. (Compl. ¶ 64.) Plaintiff believed that Defendant Walden Police Department failed to investigate the incident and failed to produce the video because of his race and national origin. (Compl. ¶ 65.) On or about August 17, 2015, Plaintiff reported the incident in writing to Defendant the Village of Walden, Office of the Village Manager, but no actions were taken. (Compl. ¶ 67.) Plaintiff believed that Defendants' inaction was due to his race and national origin. (Compl. ¶ 68.)

E.  Gathering On the Property and Refusal to Grant Access

On November 8, 2015, an estimated one hundred to two hundred people gathered near Plaintiff's driveway for a gathering at the adjacent local Veteran's Park. (Compl. ¶ 69.) A portion of the crowd trespassed onto the Property and blocked Plaintiff's driveway. (Compl. ¶ 70.)  Three officers of the Defendant Walden Police Department (Metzger, Montanaro and Conklin) barricaded the people on the Property. (Compl. ¶ 71.) Plaintiff attempted to enter his Property but was prevented from doing so by the Defendants. (Compl. ¶ 72.)

Plaintiff left, and then returned to the Property, where the three aforementioned Defendants continued to deny him access or clear out the trespassers. (Compl. ¶¶ 73 – 74.) The crowd refused to move when asked by Plaintiff and began to yell slurs and curse at Plaintiff, telling him that he does not belong in this country because of his national origin. (Compl. ¶ 75.)

Plaintiff filed complaints about the November 8, 2015 incident with the Village of Walden, Office of the Village Manager on November 8, November 9, and November 10, 2015. (Compl. ¶ 76.)

F. Enactment of Local Law to deprive Plaintiff of Parking on Cliff Street

On January 19, 2016, the Village of Walden enacted Local Law No. 1 of 2016, which had the effect of depriving Plaintiff the ability to park on Cliff Street. (Compl. ¶¶ 77 – 80.) Plaintiff believes that this law was purposefully directed against him because of his race and national origin. (Compl. ¶ 79.) The Village of Walden denies Plaintiff parking and access onto Cliff Street, but permits others to park and stand. (*Id.*)

In April 2016, Defendant Village of Walden painted striping on Cliff Street, denying Plaintiff access and right to park on Cliff Street. (Compl. ¶ 80.) Plaintiff believes that this is due to discriminatory animus based on his race and national origin. (Compl. ¶ 81.) Defendant Village of Walden and Defendant Walden Police cited Plaintiff for parking on Cliff Street at least twice, respectively on November 6, 2016 and November 5, 2017. (Compl. ¶¶ 82 – 83.)

G. Denied Access to Sewer Pipes

On March 17, 2016, Defendant Stickles, Defendant Holmes, Defendant Metzger and Defendant Walden Police Department, relying upon Local Law No. 1 of 2016 and the transfer of Cliff Street to Walden Preservation, prohibited Plaintiff from accessing and repairing the underground sewer line, which services the building on Plaintiff's Property. (Compl. ¶¶ 84 – 86.) Defendants threatened to arrest Plaintiff on the account that he was trespassing over Cliff Street when attempting to have the sewer pipes repaired. (*Id.*) Plaintiff believes that the prohibition was due to Plaintiff's race and national origin. (Compl. ¶¶ 87 – 88.)

**STANDARD OF REVIEW**

**I.      Fed. R. Civ. P. 12(b)(1)**

Under Rule 12(b)(1), the court must dismiss a case at any stage if the court determines that it lacks subject matter jurisdiction over the action. *Ross ex rel. Dunham v. Lantz*, 408 F.3d 121, 123 (2d Cir. 2005) (per curiam). A 12(b)(1) motion must be decided before other motions to dismiss. *See Winn v. Schafer*, 499 F. Supp. 2d 390, 394 (S.D.N.Y. May 7, 2007). In deciding a Rule 12(b)(1) motion, the court is not limited to the face of the complaint and may consider evidence outside the pleadings to resolve disputed factual issues. *See State Emps. Bargaining Agent Coal v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007); *Phifer v. City of N.Y.*, 289 F.3d 49, 55 (2d Cir. 2002). The plaintiff has the burden of proving that subject matter jurisdiction exists by a preponderance of the evidence. *Phifer*, 289 F.3d at 55 (internal citation omitted).

On a motion to dismiss, courts may take judicial notice of prior judicial opinions, which constitute public record. Fed. R. Evid. 201(b).

**II.     Fed. R. Civ. P.12(b)(6)**

Under Rule 12(b)(6), a court must dismiss a complaint that fails to state a claim upon which relief can be granted. When deciding a motion to dismiss under Rule 12(b)(6), courts "accept all factual allegations as true and draw all reasonable inferences in plaintiff's favor." Nonetheless, "the claim may still fail as a matter of law if it appears beyond doubt that plaintiff can prove no set of facts in support of its claim which would entitle it to relief, or if the claim is not legally feasible." *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

A motion to dismiss pursuant to Rule 12(b)(6) can raise a defense of judicial estoppel, res judicata, or collateral estoppel where the basis for that defense is set forth on the face of the complaint or established by public record. *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612,

620 (S.D.N.Y. 2007). When a defendant raises res judicata or collateral estoppel as an affirmative defense and "it is clear from the face of the complaint, and consideration of matters which the court may take judicial notice of, that the plaintiff's claims are barred as a matter of law," dismissal is appropriate. *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000); *see also Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992).

### III. Standing

The issue of standing is a threshold jurisdictional issue, which a federal court must entertain before reaching the merits of the case. *See Ross ex rel. Dunham v. Lantz*, 408 F.3d at 123 (2d Cir. 2005) (per curiam). Lack of standing deprives the court of its jurisdiction over the claims in question. *Id.* "Without jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Under 11 U.S.C. § 541(a)(1), when a debtor files for bankruptcy, all of the debtor's assets become property of the bankruptcy estate. *See BPP Ill., LLC v. Royal Bank of Scot. Grp., PLC*, No. 15-cv-3706, 2015 U.S. Dist. LEXIS 141824, at *13-16 (2d Cir. June 13, 2017). Such assets include "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative," including "causes of action owned by the debtor or arising from property of the estate." *Id.* at *16 (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (per curiam)). To ensure that the trustee of the estate is able to pursue any claims belonging to the estate, the Bankruptcy Code requires a debtor to disclose all of its actual or potential assets. *Id.* In the case of "accrued causes of action," disclosure is required as long as the debtor "has enough information prior to confirmation to suggest that it may have a possible cause of action." *Id.* This holds true even if the debtor does "not know all the facts or even the legal basis for the cause of action." *See* 11 U.S.C. § 521(a)(1)(B)(i); *Sea Trade Co. v.*

10

*FleetBoston Fin. Corp.*, No. 03-cv-10254 (JFK), 2008 WL 4129620, at *12 (S.D.N.Y. Sept. 4, 2008) (internal quotation omitted).

If a debtor fails to disclose or schedule certain assets during their bankruptcy proceedings, such undisclosed assets "automatically remain property of the estate after the case is closed." *BPP Ill., LLC.*, 2015 U.S. Dist. LEXIS 141824 at *16; *see also* 11 U.S.C. § 554(c)-(d). It follows that "unscheduled claims that accrued before a bankruptcy proceeding is terminated belong to the bankruptcy estate rather than the debtor, and the debtor lacks standing to raise those claims." *BPP Ill., LLC.*, 2015 U.S. Dist. LEXIS 141824, at *16; *see Gache v. Hill Realty Assocs., LLC*, No. 13-cv-1650 (CS), 2014 WL 5048336, at *5 (S.D.N.Y. Sept. 22, 2014) ("Because only the bankruptcy trustee can bring a cause of action on behalf of a bankruptcy estate, a debtor does not have standing to bring a claim that was property of the bankruptcy estate and was not abandoned or administered by the bankruptcy trustee.").

## DISCUSSION

### I. Standing

Plaintiff failed to disclose his causes of action in the instant federal case during his bankruptcy proceeding and therefore, lacks standing to bring the case at bar. Disclosure of the instant claims is required: Plaintiff's October 16, 2016 state court action arose from the same occurrences as those giving rise to the instant action; Plaintiff can be fairly said to have more than "enough information . . . to suggest that it may have a possible cause of action" during his bankruptcy proceeding. *BPP Ill., LLC.*, 2015 U.S. Dist. LEXIS 141824, at *16.

Plaintiff contends that, according to *Olick v. Parker & Parsley Petroleum Co.*, a Chapter 13 debtor retains standing to litigate causes of action that are not part of a case under Title 11.

11

145 F.3d 513, 515 (2d Cir. 1998). The *Olick* holding, however, applies to causes of action "that are not part of a case under title 11." *Id.*; *see BPP Ill., LLC*, 2015 U.S. Dist. LEXIS 141824, at *13; *Thomas v. Barrett*, 532 F. App'x 10 (2d Cir. 2013). Even a Chapter 13 debtor lacks standing if his claims or causes of action are part of the bankruptcy estate. In the present case, Plaintiff's claims in the instant action belong to the bankruptcy estate: firstly, his causes of action extended throughout the entirety of his bankruptcy filing, from 2015 to date; secondly, five of Plaintiff's claims were related to his rights in Property at 154 West Main Street, Orange, New York, a subject in the bankruptcy proceeding; lastly, because Plaintiff's bankruptcy proceeding was discharged in his favor, his unscheduled assets were not re-vested in him and remain part of the bankruptcy estate. *Cf. Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473 (2d Cir. 2014) (finding that plaintiff's assets were re-vested in her because her previous bankruptcy proceeding was dismissed, rather than discharged).

A liberal construction of the factual allegations in Plaintiff's Complaint evinces possible claims for equitable relief. However, Plaintiff does not expressly seek equitable relief in the instant action (Compl. pp. 13-14) and limits his demands to monetary damages which, as discussed, belong to the bankruptcy estate. This Court notes that Defendants affirmatively represent to the Court that Plaintiff filed a state court action. In that state action, Plaintiff seeks a declaratory judgment that Plaintiff has an easement, permitting Plaintiff ingress and egress over the former Cliff Street such that Plaintiff would have access to and from his driveway and prohibiting Defendants from interfering with that easement. (Defs.' Mot., Ex. B, p. 8). However, Plaintiff only affirmatively seeks monetary damages in the matter before this Court.

**II.       Judicial Estoppel**

Defendants argue that because Plaintiff failed to disclose his interest in bringing this action in his bankruptcy proceeding before the closing, the doctrine of judicial estoppel bars the instant action. This court agrees.

The equitable doctrine of judicial estoppel can be invoked at a court's discretion to prevent a party from "asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). The underlying goal of the doctrine is to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 750.

In the bankruptcy context, judicial estoppel is frequently invoked to prevent a party who fails to disclose a claim in bankruptcy proceedings from asserting that claim after discharge. *Ibok v. SIAC-Sector Inc.*, No. 05-cv-6584 (GBD) (GWG), 2011 WL 293757, at *20 (S.D.N.Y. Jan. 27, 2011) (internal quotation marks and citation omitted); *see also Negron v. Weiss*, 2006 WL 2792769, at *3 (E.D.N.Y. Sept. 27, 2006); *Coffaro v. Crespo*, 721 F. Supp. 2d 141, 145 (E.D.N.Y. 2010). Because the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets, a debtor is not permitted to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently assert those claims for his own benefit in a separate proceeding. *Ibok*, 2011 WL 293757, at *20.

However, if the failure to disclose results from a "good faith mistake or an unintentional error," judicial estoppel does not apply. *Id.* at *21 (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 n.2 (2d Cir. 1999)). Because the Second Circuit has not established a standard for when to apply the good faith exception, district courts in this Circuit have referenced

13

other circuit courts' rulings and held that "failure to disclose assets will only be deemed inadvertent or due to mistake when either the debtor has [1] no knowledge of the claims or [2] no motive to conceal the claims." *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 599 (S.D.N.Y. 2013) (quoting *Coffaro v. Crespo*, 721 F. Supp. 2d 141, 146 (E.D.N.Y. 2010)); *see also Ibok*, 2011 WL 293757, at *22.

Plaintiff contends that his failure to list the federal action on the Bankruptcy Petition and Schedules was inadvertent and caused by an attorney error. (Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n.") p. 7, ECF No. 49.) Plaintiff states that he was advised by his bankruptcy attorney that he did not have to list his federal cause of action in his bankruptcy proceeding because he had not yet filed the action, and that he was unaware that his Bankruptcy Petition and Schedules needed to be amended after the filing. (Pl.'s Aff. ("Pl.'s Aff.") pp. 8 – 10, ECF No. 50.) Defendants challenge the truthfulness of Plaintiff's account and draw this Court's attention to the inconsistency between the two Bankruptcy Court Dockets provided by Parties respectively. (Reply p. 2.)

A. Good Faith Exception Test

This Court considers the good faith test articulated in *Ibok* appropriate and, applying it to the case at bar, finds that Plaintiff's contention will not pass muster. It is undisputed that Plaintiff had knowledge of the claims in the present action: Plaintiff states in his affidavit that he discussed the claims with his creditors and his bankruptcy attorney. (Pl.'s Aff., Ex. 1, p. 2.) On the question of whether Plaintiff has a motive to conceal the claims, the facts here are comparable to those in *Ibok*, and thus the precedent's reasoning is highly instructive: "Had the trustee known about the claim, [they] might have attempted to sell the claim or to have extracted a settlement from the defendants in this case for the benefits of Ibok's creditors." *Ibok*, 2011 WL

293757, at *24. There, as here, "the concealment of his claim[s], by contrast, would put any recovery on the claim beyond the reach of his creditors," which creates an incentive for Plaintiff to conceal the claims. Such circumstances stand in contrast to *United States v. Hussein*, cited and relied on by Plaintiff, where the dispute turned on an erroneous date entered in an affidavit. The mistake was in detriment to defendant Hussein's interest, which attests to its inadvertent nature and Hussein's lack of incentive to mislead the court. 178 F.3d 125, 130 (1999).

Plaintiff further points to *Leahey v. SP Ctr., LLC*, where the plaintiffs failed to disclose their pending lawsuits, but were nonetheless excepted from judicial estoppel "absent a showing of bad faith." No. 14-cv-7411 (RWS), 2017 U.S. Dist. LEXIS 183593, *11 (S.D.N.Y. Nov. 5, 2017). *Leahey* is distinguishable on the factual grounds. The plaintiffs in *Leahey* were able to evidence their erroneous belief that "their bankruptcy attorney had already disclosed this case to the Bankruptcy Court shortly after the commencement of [their] action" by substantial record in writing, much of which was produced prior to their bankruptcy proceedings' discharge. *Id.* Leahey's bankruptcy attorney further testified to this effect, confirming that the plaintiffs had asked the attorney to inform the Bankruptcy Court of their lawsuit. *Id.* In the instant case, the affidavit on which Plaintiff relied was produced and submitted only after Defendants brought the Bankruptcy Discharge to the Court's attention in their Motion to Dismiss. This Court cannot consider new facts raised in opposition to Defendants' arguments, when such facts are not part of the public record of which this Court may take judicial notice. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); Fed. R. Evid. 201(b). Moreover, Plaintiff filed his initial Complaint on or about March 24, 2018, approximately three weeks after his Bankruptcy Discharge and two months prior to the closing, and yet he did not in any way inform this Court

of the existence or status of his bankruptcy proceeding. Accordingly, this Court is unable to draw an inference of good faith.

B. Three Factors that Guide Judicial Estoppel Inquiry

The analysis so far counsels in favor of estoppel. Nevertheless, this Court ought to inquire further and look beyond the narrowly-focused good faith exception test, since the Second Circuit is yet to adopt the test and limits judicial estoppel to situations "where the risk of inconsistent results with its impact on judicial integrity is certain." *Lawsky v. Frontier Ins. Grp, LLC*, 598 B.R. 87, 100 (S.D.N.Y March 18, 2019) (quoting *Azuike v. BNY Mellon*, 962 F. Supp. 2d at 598 (S.D.N.Y. 2013)). After all, the inquiry of judicial estoppel is inherently case-specific, and "the exact criteria for invoking [the doctrine] will vary based on specific factual contexts." *See Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014). It is therefore appropriate to assay the relevant facts utilizing the three factors that typically guide the judicial estoppel analysis. *New Hampshire v. Maine*, 532 U.S. at 750.

1. Inconsistent Position

The first factor is whether Plaintiff's position in this proceeding is "clearly inconsistent" with his earlier position in the bankruptcy action. *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010). Here, the question turns on whether Plaintiff took an inconsistent position by omitting the present suit from his Bankruptcy Petition and Schedules. This Court concludes that he did. Section 521 of the Bankruptcy Code sets forth a debtor's affirmative duty to disclose all his legal and equitable interests in property. 11 U.S.C. § 521(a)(1)(B)(ii). Specifically, Section 521(a) requires the debtor to file a schedule of assets and liabilities, 11 U.S.C. § 521(a)(1)(B)(ii), which must include "all property that falls within the broad ambit of Section 541(a), including any unliquidated causes of action existing as of the commencement of the case." *Chartschlaa v.*

*Nationwide Mut. Ins. Co.*, 538 F.3d 116 (2d Cir. 2008). This disclosure is "essential to the proper functioning of the bankruptcy system." *Id.*; *see also Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y 1996) ("The integrity of the bankruptcy system rests on full and honest disclosure by debtors of all of their assets."). Moreover, the debtor's duty to disclose "is a continuing one and does not end with the filing of the bankruptcy petition." *In re Lowery*, 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008).

Plaintiff does not dispute his failure to disclose. After the commencement of the instant action, Plaintiff has an affirmative and continuing duty to amend his Bankruptcy Petition and Schedules, which he violated by omission. Regardless of the reasons behind the omission, Plaintiff's pursuit of interests that are unlisted in his Bankruptcy Petition constitutes fundamental inconsistency. *See Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, n.4 (Bankr. S.D.N.Y. Apr. 28, 1999) ("[D]ebtors' failure to schedule their cause of action, and their subsequent prosecution of the same cause of action places them in a posture of fundamental inconsistency," estopping prosecution of that action); *see generally Coffaro v. Crespo*, 721 F. Supp. 2d 141, 145-46 (E.D.N.Y. 2010) (debtor's failure to list claim for ownership of painting with bankruptcy court was inconsistent with later assertion of ownership in district court).

2. Adoption of the Previous Position

The second factor guiding the judicial estoppel inquiry is whether Plaintiff's omission led the Bankruptcy Court to adopt his earlier and inconsistent position. *DeRosa*, 595 F.3d at 103. The Court concludes that it did. Plaintiff commenced the instant action on March 26, 2018, approximately three weeks after a favorable discharge and months prior to the Bankruptcy Proceeding's closure on May 30, 2018. Yet this action was never listed in the Petition or Schedule thereof. "It is well established in the Second Circuit that a discharge of debts under §

727, together with the closing of a bankruptcy case without the distribution of an asset, constitutes an adoption of the position that the asset does not exist." *Edwards v. CGI Grp. Inc.*, No. 11-cv-8611 (AT), 2018 WL 4043142, *9 (S.D.N.Y. Aug. 10, 2018); *see, e.g., Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 599 (S.D.N.Y. 2013) ("[T]he Bankruptcy Court adopted plaintiff's representation that such a claim did not exist when it discharged his debts and closed the bankruptcy case."); *Ibok*, 2011 WL 293757, at *7 ("The Bankruptcy Court, in discharging [plaintiff] and closing his case, adopted [his] stated position that he did not have any outstanding legal claims."). This Court can accordingly conclude that the Bankruptcy Court adopted Plaintiff's prior position, which is inconsistent with this action.

    3. Unfair Disadvantage

The third factor guiding the judicial estoppel inquiry is whether the party that asserts an inconsistent position derives an unfair advantage or imposes an unfair detriment on the party invoking estoppel. *DeRosa*, 595 F.3d at 103. The Court concludes that Plaintiff gained an unfair advantage through failure to disclose this action in his bankruptcy proceeding.

By failing to amend his Bankruptcy Schedule and Petition after filing the instant action, Plaintiff prevented the trustee of his bankruptcy estate from "pursuing his claim for the benefit of his creditors while preserving his ability to recover on the claim himself." *Azuike*, 962 F. Supp. 2d at 599. Accordingly, Plaintiff derived an unfair advantage from his failure to disclose this action as an asset to the Bankruptcy Court.

    4. Judicial Integrity

In addition to the three factors, the Second Circuit requires a court invoking judicial estoppel to find that doing so is necessary to protect judicial integrity. *Id.*; *accord DeRosa*, 595 F.3d at 103. As discussed earlier, "the integrity of the bankruptcy system depends on full and

honest disclosure by debtors of all of their assets." *Ibok v. SIAC-Sector Inc.*, No. 05-cv-6584 (GBD) (GWG), 2011 WL 293757, at *6 (S.D.N.Y. Jan. 27, 2011) (quoting *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996)). Where, as here, Plaintiff failed to list this action on his Petition and Schedules, and further failed to inform this Court of his bankruptcy proceeding when he filed this action within a month of the discharge, his claim should be estopped so as to preserve judicial integrity. A decision to the contrary "would . . . diminish [future parties] incentive to provide a true and complete disclosure of [their] assets to the bankruptcy courts." *Azuike*, 962 F. Supp. 2d at 599.

As all three factors informing judicial estoppel analysis counsel in favor of dismissal and Plaintiff does not qualify for the good faith exception, the instant action is accordingly estopped. This conclusion deprives this Court of its jurisdiction over Plaintiff's claims, and prevents the Court from reaching the remaining arguments advanced by either party.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 44 and close this case.

Dated: July 19, 2019  
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN  
United States District Judge